FARMINGDALE REALTY CO., PLAINTIFF-APPELLANT, v. BOROUGH OF FARMINGDALE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 17, 1968—Decided January 31, 1969.

Before Judges GOLDMANN, KOLOVSKY and CARTON.

Mr. *John Warren, Jr.* argued the cause for appellant (*Messrs. Parsons, Canzona, Blair & Warren,* attorneys; *Mr. William G. Bassler* on the brief).

Mr. *John W. O'Mara* argued the cause for respondent (*Messrs. Saling, Boglioli & Moore,* attorneys).

The opinion of the court was delivered by

CARTON, J. A. D.  Plaintiff Farmingdale Realty Co. appeals from a judgment dismissing its complaint against de-

fendant Borough of Farmingdale, seeking a tax refund under *N. J. S. A.* 54:4-54 because of alleged duplicate assessments on certain buildings and improvements for the years 1962, 1963 and 1964. The land assessment is not in question.

In 1962 the improvements were assessed at $187,000. In 1963 and 1964 they were assessed at $215,000. The parties have stipulated that a revaluation firm, employed by defendant Borough in 1962, valued the improvements on plaintiff's property at $144,021, and that the assessor, in computing the assessments, included not only the value of a residence owned and occupied by plaintiff's president, but also duplicated the value of some of the buildings. If these improvements had been assessed on the basis of the valuations fixed by the revaluation firm, the assessments would have been $42,979 less in 1962 and $71,187 less in the years 1963 and 1964. No appeals were taken from these annual assessments.

The parties have also stipulated that these events are reflected only in office records described as "Assessors Cards" originally prepared by the revaluation company in conjunction with the revaluation. The annual tax duplicate contains a single entry for land and another single entry for buildings and improvements which reflect only "a total valuation for land and total valuation for buildings without distinction as to a particular building or how the figures were arrived at."

This situation came to light when plaintiff appealed to the county tax board in 1965 from the $215,000 assessment for that year on improvements. The result was a settlement, confirmed by judgment of the tax board, reciting that the property was assessed in excess of its true value and reducing the value of the buildings to $140,000.

In January 1966 plaintiff filed a petition with the county tax board under *N. J. S. A.* 54:4-54, seeking to compel defendant to refund the excessive tax payments made following

these assessments. *N. J. S. A.* 54:4–54 provides, in pertinent part:

"Where by mistake property real or personal has been twice entered and assessed on the tax duplicate, the governing body of the taxing district or county board of taxation may order and cause the tax record to be corrected and if the tax has been twice paid the governing body of the taxing district shall refund the excessive payment without interest. * * *"

Plaintiff also applied to the borough for a refund. The borough refused, and the tax board, in turn, refused to order it to do so. Plaintiff did not appeal to the State Division of Tax Appeals. Instead, it instituted this Law Division action, requesting damages for the amount of the taxes overpaid, totaling $5,644.43 with interest.

The trial judge found that relief should be denied to plaintiff taxpayer because it had not established that the property had been "twice entered and assessed on the tax duplicate." He noted that ((as pointed out above) the tax duplicate itself contained only a single figure for the assessment of land and another one for the assessment of buildings and improvements, without any breakdown for the individual items comprising that figure. The fact that there existed a duplication of the value of certain buildings could therefore be ascertained only by a review of the separate valuations for the individual buildings and improvements appearing on the source records, the assessment cards, located in the assessor's office.

■ Admittedly, plaintiff's property had not been "twice entered and assessed on the tax duplicate" for the years in question. Nonetheless, plaintiff argues that this fact is immaterial. The thesis advanced is that there is no substantial difference between an assessor twice evaluating the same property and placing a total figure which is mathematically incorrect on the tax duplicate, and, on the other hand, listing each property twice on the tax duplicate. It urges that in both instances the property is twice assessed.

This argument disregards entirely the plain language of the statutory provision on which plaintiff's claim to relief is grounded.

■ Considered alone, and without regard to the remainder of the Tax Act, the language of *N. J. S. A.* 54:4–54, upon which plaintiff relies, suggests that it was designed to create a special remedy to cover a situation where there is a patent error in the taxing process; that is, one that is readily ascertainable by a simple inspection of the tax duplicate. This interpretation is confirmed by reference to the remainder of that section which specifies a number of different types of mistakes and designates the agency authorized to correct them, as well as the manner and time within which this must be done. For example, it provides for the correction of a mistake where an assessment intended for one parcel has been placed upon another one, and for a situation where one person has mistakenly paid the tax on the property of another, supposing it to be his own. Further, it would seem that even though this provision is designed to permit correction of certain mistakes, its use is limited to the kind of mistakes specified and to relief being granted in the manner provided in the statute. An error which cannot be detected from an inspection of the duplicate itself does not seem to fall within the category of mistakes for which the remedy was provided.

The tax duplicate, by statutory definition, is a true copy of the assessor's assessment list. *N. J. S. A.* 54:4–37. Plaintiff's contention fails to give proper weight to the very important part the tax duplicate plays in the statutory scheme for tax administration. Let us briefly examine the pertinent provisions of that scheme.

The Tax Act delineates, in considerable detail, the specific functions to be performed by the assessor and sets an exact time schedule for their completion. Thus, *N. J. S. A.* 54:4–23 directs the assessor to ascertain the names of the owners of all real property in the taxing district, and, after examination and inquiry, to "determine the full and fair value

of each parcel of real property situate in the taxing district * * *." In accordance with forms and methods prescribed by the Director of the Division of Taxation, the assessor is directed to make a "list in tabular form" of the names of such owners, and to "set down in proper columns opposite each name the description and area of each parcel sufficient to ascertain its location and extent and the taxable value of *each parcel* * * *" (emphasis added). The statute also specifically requires that the tax bill shall contain separate valuations of land and buildings. *N. J. S. A.* 54:4–24, 26.

The assessor must complete his assessment list and file that list, as well as the copy which is designated the tax duplicate, with the county board of taxation by January 10. *N. J. S. A.* 54:4–35. The Tax Act mandates that, ten days before such filing, he

"* * * shall give public notice by advertisement in at least one newspaper circulating within his taxing district of a time and place when and where the assessment list may be inspected by any taxpayer for the purpose of enabling the taxpayer to ascertain what assessments have been made against him or his property and to confer informally with the assessor as to the correctness of the assessments, so that any errors may be corrected before the filing of the assessment list and duplicate." *N. J. S. A.* 54:4–38.

The freeholder boards, must, not later than 90 days after the beginning of the budget year, transmit to the county board of taxation a statement of the total amount appropriated and to be raised for current expenses, and must apportion the tax among the taxing districts. *N. J. S. A.* 54:4–42.

*R. S.* 54:4–46 commands the county tax board to meet annually for the purpose of "examining, revising and correcting the tax lists and duplicates," and authorizes the board to compel assessors to prepare corrected tax lists and duplicates. *N. J. S. A.* 54:4–47 requires it to revise, correct and equalize the assessed value of all property in the respective taxing districts. The board is directed next to "enter all changes or additions on the various tax lists and duplicates" and to

"fix and adjust the amount of State school, State and county tax to be levied in each taxing district in the county in proportion to the respective values thereof, * * * cause each assessor to enter in appropriate columns upon the tax lists and duplicates for his respective taxing district the net corrected value assessed · to each person for both real and personal property, * * * and to extend on the duplicates, (a) the amount of tax computed on each assessment at that rate * * *." *N. J. S. A.* 54:4–48.

Under *N. J. S. A.* 54:4–53 the county board is given authority to make adjustment by debit or credit in the following year "upon proof of the discovery of a clerical error in the reported ratables of a taxing district," after the amounts to be raised for various purposes have been apportioned for a given year.

Immediately following the provision upon which plaintiff relies appears the following provision, directing the county board, on or before May 1 of each year, to

"cause the corrected, revised and completed duplicates, certified by it to be a true record of the taxes assessed, to be delivered to the collectors of the various taxing districts in the county, and the tax lists shall remain in the office of the board as a public record. Thereafter neither the assessor nor the collector shall make or cause to be made any change or alteration in the tax duplicate except as may be provided by law." *N. J. S. A.* 54:4–55.

The tax assessors are given authority by the tax board to have custody of the duplicates, but they are forbidden to make any change or alteration to the duplicate. *N. J. S. A.* 54:4–55.1. Provisions also appear in the statute for the filing, correction and delivery of the added assessment list, and added assessment duplicate. *N. J. S. A.* 54:4–63.17.

It is readily seen that the Legislature has, over the years, developed a very comprehensive scheme governing the entire assessment process and has provided special remedies and procedures for correction and revision of assessments by various agencies at specified stages of that process during the tax year. The specific provisions for the preparation, filing, revision and correction of the tax . duplicate and the frequent references to that document appearing in the Tax

Act emphasize the important role which that document plays in that process and convincingly establishes that the Legislature intended the term "tax duplicate" as a term of art, having a technical and well understood meaning. See *N. J. S. A.* 1:1–1.

The conclusion seems inescapable that the right granted a taxpayer under *N. J. S. A.* 54:4–54 to seek correction of mistakes in assessments is a remedy which is made available to him only if he complies with the express requirements of that provision. It is clear that plaintiff has not shown itself to be entitled to the relief which that provision was intended to afford. *Cf. Aichele v. Borough of Oakley*, 1 *N. J. Super.* 621, 626 (*Law Div.* 1948).

Under the statutes referred to above, the tax assessor was obliged to publish when the tax assessment lists were available for inspection. If plaintiff was concerned about the aesessment, it could have inspected the assessment list and could have conferred with the assessor as to the correctness of the assessments, so that any error could be corrected before the filing of the tax list and tax duplicate. If it was dissatisfied with the amount of the assessment for improvements imposed for the years 1962 through 1964, it could well have appealed such assessments in the same manner as it appealed its 1965 assessment.

The statute affords special remedies for correction of errors at various stages of the taxing process, from the preparation of the original tax lists and tax duplicate through to the equalization of taxes among the districts. Bearing in mind the fact that taxes are levied and imposed on an annual basis, and bearing in mind the precise timetable fixed by the Tax Act for the performance of the various stages of assessment and review, the legislative design is clear that all corrections should be made in conformity with the statutory procedure in order to permit the various statutory agencies to perform the various tasks assigned to them.

All of the foregoing points to the conclusion that plaintiff may not disregard the plain requirements of the statute

and at this late date repair its oversight in failing to appeal the assessments in the usual fashion. In view of the conclusion we have reached, we deem it unnecessary to consider whether plaintiff may also be precluded from prosecuting this action for failure to exhaust its administrative remedies by appealing from the county tax board's refusal to order a refund.

The judgment is affirmed.